DEWEY BALLANTINE LLP
Jeffrey L Kessler (JK 7891)
David G. Feher (DF 4867)
Allan L. Garcia
Jeffrey S. Rugg
1301 Avenue of the Americas
New York, New York 10019-6092
Tel: (212) 259-8000

NATIONAL BASKETBALL PLAYERS ASSOCIATION
Ronald Klempner
Hal Biagas
Two Penn Plaza, Suite 2430
New York, New York 10121

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NATIONAL BASKETBALL ASSOCIATION,           :
                                           :
                           Plaintiff,      :    04 Civ. 09528 (GBD)
                                           :
         -against-                         :    **NOTICE OF MOTION**
                                           :    **TO CONFIRM ARBITRATION**
NATIONAL BASKETBALL PLAYERS                :    **AWARD**
ASSOCIATION, RON ARTEST, STEPHEN           :
JACKSON, ANTHONY JOHNSON and               :
JERMAINE O'NEAL,                           :
                                           :
                           Defendants.     :
-----------------------------------------------------------x

　　　　PLEASE TAKE NOTICE THAT upon the affirmations of Ronald E. Klempner, the exhibits annexed thereto, the accompanying Memorandum of Law, and upon all the papers and proceedings heretofore had herein, Defendants, National Basketball Players Association and Jermaine O'Neal, will move this Court before the Hon. George B. Daniels, on December 30, 2004 at 11 am, or as soon thereafter as counsel can be heard, for an Order granting its motion to confirm arbitration award together with such other and further relief as the Court deems just and proper.

DATED:   December 29, 2004
         New York, New York

                        DEWEY BALLANTINE LLP

                        By: /s/ Jeffrey L. Kessler
                        Jeffrey L. Kessler (JK 7891)
                        David G. Feher (DF 4867)
                        Allan L. Garcia
                        Jeffrey S. Rugg
                        1301 Avenue of the Americas
                        New York, New York 10019
                        (212) 259-8000

                        NATIONAL BASKETBALL PLAYERS ASSOCIATION
                        Ronald E. Klempner
                        Hal Biagas
                        Two Penn Plaza, Suite 2430
                        New York, New York 10121

                        Attorneys for Defendants


TO:   SKADDEN, ARPS, SLATE, MEAGER & FLOM LLP
      Jeffrey A. Mishkin
      Douglas B. Adler
      Anthony J. Dreyer
      Four Times Square
      New York, New York 10036

      PROSKAUER ROSE LLP
      Howard L. Ganz
      Daniel R. Halem
      1585 Broadway
      New York, New York 10036

      Attorneys for Plaintiff

DEWEY BALLANTINE LLP
Jeffrey L Kessler (JK 7891)
David G. Feher (DF 4867)
Allan L. Garcia
Jeffrey S. Rugg
1301 Avenue of the Americas
New York, New York 10019-6092
Tel: (212) 259-8000

NATIONAL BASKETBALL PLAYERS ASSOCIATION
Ronald E. Klempner
Hal Biagas
Two Penn Plaza, Suite 2430
New York, New York 10121

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
NATIONAL BASKETBALL ASSOCIATION,                :
                                                                              :
                                                                              :
                                        Plaintiff,                    :
                                                                              :
                         v.                                              :        04 Civ. 09528 (GBD)
                                                                              :
NATIONAL BASKETBALL PLAYERS                      :        **SECOND**
ASSOCIATION, RON ARTEST, STEPHEN           :        **AFFIRMATION OF**
JACKSON, ANTHONY JOHNSON and              :        **RONALD E. KLEMPNER**
JERMAINE O'NEAL,                                            :
                                                                              :
                                        Defendants.              :
-----------------------------------------------------------------x

      RONALD E. KLEMPNER, an attorney duly admitted to practice law in the State of New York and the Southern District of New York, hereby affirms as follows:

      1.    I am Associate General Counsel for Defendant National Basketball Players Association ("NBPA"). I submit this affirmation in support of Defendants' Motion To Confirm Arbitration Award and in opposition to Plaintiffs' Motion To Vacate.

2.  In his December 22, 2004 Affidavit submitted to this Court (Buchanan Aff.), NBA General Counsel Richard Buchanan states that for the past 12 years, "the NBPA has repeatedly recognized through its actions that 'conduct on the playing court' should be broadly interpreted to encompass any player misconduct occurring at an NBA game." (Buchanan Aff. ¶ 46). This statement is not correct.

3.  In my prior Affirmation submitted to the Court, I reviewed three separate instances since the September 1995 CBA was agreed upon in which the NBA imposed discipline upon a player for conduct not "on the playing court," the NBPA filed an appeal of the discipline before the Grievance Arbitrator, the NBA and the NBPA disagreed whether the appeal should properly be before the Grievance Arbitrator or the NBA Commissioner, and the parties settled the grievance – the Dennis Rodman (1997), Rasheed Wallace (2003) and Ron Artest (2003) grievances. I will not repeat the facts of those grievances here, other than to reiterate that the NBPA unequivocally advised the NBA in each of these proceedings that the NBPA considered the conduct at issue to be "off the playing court" and subject to appeal before the Grievance Arbitrator, not Commissioner Stern. Indeed, in the Rodman grievance, the NBA agreed with us that the Grievance Arbitrator would determine the jurisdictional dispute between the parties as to who would hear the appeal, and prepared a Joint Statement of Facts And Issues for the Grievance Arbitrator to decide, including the jurisdictional issue. A copy of that statement is attached hereto as Exhibit 25.

4.  There are a number of other grievances that have arisen since September 1995 in which the NBA disciplined a player, and the NBPA filed an appeal challenging the discipline. In each of the instances in which the conduct at issue was

2

outside the context of the playing of a game itself, the NBPA did not appeal the discipline to the Commissioner, and instead filed the appeal before the Grievance Arbitrator.

5. On May 8, 2003, I filed a grievance on behalf of Rasheed Wallace contesting a $30,000 fine he received from the NBA for allegedly failing to comply with the league's media policy immediately following an April 27 playoff game and following the next day's practice. This grievance was separate from the one concerning communications between Mr. Wallace and a referee in a parking area after a game, described in my earlier affirmation. In my May 2003 letter commencing this second grievance on behalf of Mr. Wallace, I noted that "we do not believe this dispute falls within the parameters of Article XXXI, Section 8 of the CBA, and accordingly will request that the Grievance be heard and resolved by the Grievance Arbitrator." The NBA wrote back stating that it disagreed with our contention on jurisdiction. We later wrote back acknowledging the disagreement. The matter was settled without a hearing. Attached hereto as Exhibit 23 are two letters dated May 8, 2003, a letter dated May 13, 2003 and a letter dated May 21, 2003 related to this grievance.

6. In his Affidavit at Paragraphs 48 and 49, Mr. Buchanan cites several disciplinary events in which he claims that the NBPA has implicitly acknowledged a broader interpretation of the Commissioner's authority with regard to on-court conduct than what I have described above. As the following review will show, this too is not correct.

7. The cases Mr. Buchanan cites fall into three categories: either (a) the incident took place before 1995, before the CBA even allowed the NBPA to seek independent review of certain Commissioner discipline; (b) the incident did, in fact,

3

undisputedly involve "conduct on the playing court" (e.g., fights between players on the court during a game, confrontations with referees) and thus has no bearing on the facts in this case; or (c) the incident did not involve "conduct on the playing court," and was properly filed as a grievance arbitration before the Grievance Arbitrator, and not the Commissioner. For the convenience of the Court, I will briefly review each of Mr. Buchanan's citations, in the same order he used:

 a. Ewing: The Players Association does not dispute that a player leaving the bench area during an altercation on the court involving players from opposing teams during a game involves conduct on the playing court. This type of conduct involving fights between players in the flow of the game is related to the playing of the game of basketball and has nothing to do with this case.

 b. Weatherspoon/Willis: Clarence Weatherspoon and Kevin Willis fought with each other during a game in December 2002, and the fight between these two players did spill into the seating area. (As the Court is no doubt aware, the seating area at an NBA game is in extremely close proximity to the playing court, and patrons in fact sit on the arena floor, mere feet away from the players.) This incident – an on-court fight between two players – involved the playing of the game of basketball, and the resulting discipline was appealed to the Commissioner under Article XXXI, Section 8 of the CBA, and eventually settled.

 c. Hardaway: In March 2002, Tim Hardaway was in fact disciplined when, during a game, according to the letter imposing the discipline (Buchanan Aff, Exhibit 37), he "verbally abused a game official, failed to leave the court in a timely manner and threw a television monitor onto the court following [his]

4

ejection." This on-court confrontation with, and reaction to, a referee during a game involved the playing of the game of basketball, and the attendant discipline was appealed to the Commissioner under Article XXXI, Section 8 of the CBA. The matter was eventually settled.

    d.  <u>Miller/Bryant</u>: During a game in March 2002, Reggie Miller and Kobe Bryant exhibited aggressive play against each other and the two engaged in a shoving match on the court moments after the final buzzer sounded. This on-court altercation between two players involved the playing of the game of basketball, and the attendant discipline was appealed to the Commissioner under Article XXXI, Section 8 of the CBA. The matter was eventually settled.

    e.  <u>Mercer</u>: Following a game in March 2000, Ron Mercer was allegedly involved in a confrontation with another player outside the opposing team's locker room. This incident – which took place approximately 20 minutes after the game had ended, off the court, and in the locker room area, with the players dressed in street clothes – had nothing to do with the playing of the game of basketball, and accordingly was filed as a grievance arbitration with the Grievance Arbitrator.

    In his affidavit, Mr. Buchanan portrays the matter as one that was filed with the Commissioner, not the Grievance Arbitrator. This is not correct. The grievance letter the NBPA filed in no way references the Commissioner or Article XXXI, Section 8, and was intended to serve as notice that the matter was to be heard by the Grievance Arbitrator. Though Mr. Buchanan sent an April 7 letter inviting the player to attend a hearing before the Commissioner, no such hearing was held, and no response was made to Mr. Buchanan's letter that would suggest a hearing before the Commissioner was

5

appropriate. (Buchanan Exhibit 39.) The grievance was later settled with Mr. Mercer receiving back the entire amount lost as a result of the suspension (more than $26,000) and instead paying a $5,000 fine.

   f.  <u>Trent</u>: In January 2000, Gary Trent entered the opposing team's locker room following the game and confronted a player. The NBA suspended Mr. Trent for one game and fined him. This incident had nothing to do with the playing of the game of basketball, and the NBPA filed a grievance before the Grievance Arbitrator.

   In his Affidavit, Mr. Buchanan states that we appealed this discipline to the Commissioner. Again, this is not correct. My grievance letter makes no reference whatsoever to the Commissioner and certainly does not invoke Article XXXI, Section 8. (Buchanan Aff. Exh. 40.) No appeal to the Commissioner was ever requested, processed or heard. In that same game, another player, Mark Davis, was fined and suspended for slamming an opposing player, Shawn Bradley, to the ground during the game. On the same day that I filed the Trent grievance with the Grievance Arbitrator, I filed an appeal on behalf of Mark Davis with the Commissioner. I have attached a copy of that appeal as Exhibit 24. In the Davis appeal, I specifically referenced Article XXXI, Section 8 in the first sentence of the letter. I made no such mention in the grievance letter filed on behalf of Trent.

   g.  <u>P.J. Brown</u>: The P.J. Brown discipline referred to in Paragraph 48(g) of the Buchanan affidavit involved solely an altercation between two players during the course of a basketball game. Accordingly, the appeal filed by the agent in that case and referred to in Exhibit 41 of the Buchanan Affidavit was properly filed with the

6

Commissioner. The fact that one of the players involved may have been thrown into a group of photographers sitting courtside has no bearing whatsoever on the fact that the incident involved an altercation between players during a game.

        h.        <u>Maxwell</u>: The February 1995 incident involving Vernon Maxwell was reviewed in my earlier affirmation submitted to the Court. As reviewed in that affirmation, because the incident occurred before the September 1995 amendments to the CBA, an appeal to the Commissioner was the <u>only</u> avenue the player had to appeal, as the then-prevailing CBA provisions were substantially different from the current Article XXXI, § 8 of the 1999 CBA.

        i.        <u>English/Harper</u>: As with the Clarence Weatherspoon and P.J. Brown incidents discussed above, the discipline arising from the fight between JoJo English and Derek Harper that spilled over into the seating area was properly filed by the agent for English with the Commissioner, as this fight was between two players during a game.

        8.        Mr. Buchanan has sent several letters to the NBPA summarizing the settlement of various disputes between the NBA and the NBPA, and he attempts to use those letters to suggest that the NBPA has conceded that all of the cases mentioned in these letters involved conduct on the playing court. (<u>See</u> Buchanan Exhibits 37, 38, 39 and 40.) As to the <u>Hardaway</u> and <u>Miller</u> grievances (Exhs. 37 and 38), as discussed above, the NBPA agrees that these incidents involved "conduct on the playing court," but they have no bearing on the issues presented by the very different November 19 incident at the Auburn Hills Arena. As to the <u>Mercer</u> and <u>Trent</u> grievances , they are included in a list from Mr. Buchanan of nine disciplinary appeals that the NBA and the NBPA settled

7

(Exhs. 39 and 40). In his letter, Mr. Buchanan states in an introductory clause that the listed cases involved on-court discipline. At the time this letter was received, I focused solely on the summary of the settlements of the various cases and did not ascribe any significance to Mr. Buchanan's passing reference that he was listing cases involving "on court conduct." I certainly have never said or otherwise indicated to Mr. Buchanan that the NBPA agreed that the Mercer and Trent cases involved on-court conduct. Indeed, as reviewed above, the letters to the NBA appealing these two cases did not refer to Article XXXI, Section 8 or any proceedings before the Commissioner.

        9.     In Paragraph 49 of his Affidavit, Mr. Buchanan refers to several appeals he claims the NBPA filed with the Commissioner "where the conduct at issue occurred during a stoppage in play or after the game ended, or where the conduct was committed by players who were on the bench or who had been ejected from the game." He goes on to conclude that "[t]hese appeals reflect the Players Association's acknowledgements and understanding that 'conduct on the playing court' includes conduct occurring outside of 'the flow of the game.'" Again, Mr. Buchanan is not correct.

        10.    All but two of the incidents referenced in Paragraph 49 of Mr. Buchanan's Affidavit have already been reviewed above, and need not be re-reviewed here. They either predated the 1995 CBA (Maxwell), involved on-court conduct (Hardaway) or involved off-court conduct with appeals filed before the Grievance Arbitrator (Trent and Mercer). The remaining two incidents are similarly irrelevant.

8

    a.  The <u>Barkley</u> case, like the <u>Maxwell</u> case, occurred before the 1995 CBA was agreed upon, and is irrelevant to this case for the same reasons as is <u>Maxwell</u>.

    b.  <u>Shaquille O'Neal</u>: The remaining incident Mr. Buchanan cites in this paragraph involved an obscenity uttered on live television by Shaquille O'Neal while giving an interview on the court after the game had concluded. As with the other post-1995 CBA incidents involving off-the-court conduct, that appeal was filed as a grievance with the Grievance Arbitrator. As can be seen from the grievance itself (Buchanan Aff. Exhibit 44), nowhere did I make reference to Article XXXI, Section 8 or an appeal to the Commissioner in my filing. I have filed approximately 40 on-the-court appeals in the past six years, and I believe that, in each such filing, I have made reference in the very first sentence to Article XXXI, Section 8. I did not do so in filing the Shaquille O'Neal grievance because I firmly believed – and advised Mr. Buchanan verbally as well – that that case had nothing to do with the playing of the game of basketball and thus should not be appealed to the Commissioner. As with all of the cases reviewed herein, the NBA and the NBPA settled the case.

  11. Finally, in paragraph 52 of his Affidavit, Mr. Buchanan cites four incidents – involving players Rick Fox, Chris Mills, Reggie Miller, and J.R. Rider – in which Mr. Buchanan claims the NBPA "also declined to seek reductions in discipline before the Grievance Arbitrator," suggesting that if an appeal before the Grievance Arbitrator as opposed to the Commissioner was available, the NBPA would have filed such an appeal. This is not correct. The NBPA merely decided not to appeal these

9

disciplinary determinations, regardless of who would have had jurisdiction to hear the appeal.

12. Attached hereto as Exhibit 18 is a copy of the transcript on the December 23, 2004 hearing and decision of the Court regarding Defendants' Motion for a Temporary Restraining Order.

13. Attached hereto as Exhibit 19 is In re John Starks, Decision No. 00-01, dated March 6, 2000.

14. Exhibit 20 is a videotape of the November 19, 2004 incident at the Palace at Auburn Hills, produced by the NBA in response to the NBPA's document requests, Bates numbered NBA/DI 00003.

15. Attached hereto as Exhibit 21 is In re Vin Baker, Decision No. 04-1, dated March 11, 2004.

16. Attached hereto as Exhibit 22 is the transcript of the May 16, 1997 hearing held before and decision issued by the Hon. Jed S. Rakoff in Patrick Ewing, et al. v. David Stern, et al., No 97 Civ. 3578 (JSR) (S.D.N.Y.).

Dated: Great Neck, New York
December 29, 2004

[signature]
Ronald E. Klempner (RK 8885)

10

NY1 902944v3