```
*****************************************
In The Matter of Arbitration Between      *
                                          *
NATIONAL BASKETBALL                       *
PLAYERS ASSOCIATION                       *
                                          *
        and                               *
                                          *   Grievant: Vin Baker
NATIONAL BASKETBALL ASSOCIATION           *
                                          *   Case No. 04-1
                                          *
        and                               *
                                          *
BOSTON CELTICS                            *
                                          *
*****************************************
```

OPINION AND AWARD OF

ROGER P. KAPLAN, ESQ., SYSTEM ARBITRATOR

APPEARANCES:

For National Basketball Association:   Richard W. Buchanan, Esq.
                                       Senior Vice President &
                                       General Counsel
                                       Jon Israel, Esq.
                                       Dan Rube, Esq.

For Boston Celtics:                    Neil Jacobs, Esq.
                                       Harry T. Daniels, Esq.
                                       C. Tama Donovan, Esq.
                                       HALE & DORR LLP

Dockets.Justia.com

                                                                 Jeffrey A. Mishkin, Esq.
Anthony Dreyer, Esq.
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

For National Basketball Players
Association and Vin Baker:       Jeffrey L. Kessler, Esq.
                                                  DEWEY BALLANTINE LLP

                                                  Gary Hall, Esq.
BLITMAN & KING LLP

Ron Klempner, Esq.
Hal Biagas, Esq.

## STATEMENT OF THE CASE

On Thursday, March 4, 2004, the National Basketball Association (NBA or League) and the National Basketball Players Association (Union or Association) appointed the undersigned as the System Arbitrator in the above-cited case.[1] On that date, the parties made initial oral arguments in support of their positions. On Friday and Saturday, March 5 and 6, 2004, I received submissions of arguments and legal authorities from both parties as requested by me on March 4, 2004. On Monday, March 8, 2004, a hearing was held in New York, New York. At that time, the parties had the opportunity and did make oral arguments in support of their respective positions. A verbatim transcript was made of the hearing. No post-hearing briefs were submitted, due to the need for expedition of this matter.

---

[1] The parties agreed in Article XXXII of the CBA to appoint a System Arbitrator to decide disputes of this nature. As of March 4, 2004, no one occupied this position and, therefore, the parties mutually agreed that I would act as the System Arbitrator for this case.

2

ISSUES

The parties agreed at the hearing that I would frame the issues. I find the issues to be as follows:

1. Did the National Basketball Association violate Articles XI and XIV of the parties' Collective Bargaining Agreement when it issued a directive that "no NBA team may enter into a player contract with Baker or engage in negotiations with him concerning such a contract" until the pendency of the arbitration filed by the National Basketball Players Association has been resolved?

2. If so, what is the appropriate remedy?

PERTINENT PROVISIONS OF THE COLLECTIVE BARGAINING AGREEMENT BETWEEN THE NATIONAL BASKETBALL ASSOCIATION AND THE NATIONAL BASKETBALL PLAYERS ASSOCIATION   JANUARY 1999

ARTICLE I   DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

(y) "Free Agent" means: (i) a Veteran Free Agent; (ii) a Rookie Free Agent; (iii) a Veteran whose Player Contract has been terminated in accordance with the NBA waiver procedure;...

(ooo) "Unrestricted Free Agent" means a Free Agent who is not subject to a Team's right of first refusal.

ARTICLE XI   FREE AGENCY

Section 1. General Rules

(a) Subject to the provisions of Article VII, including, but not limited to, Article VII, Section 6 (b): (i) an Unrestricted Free Agent is free at any time after July 1 to negotiate, and free at any time after August 1 to enter into, a Player Contract with any Team;...

3

## ARTICLE XIV    ANTI-COLLUSION PROVISIONS

Section 1.    No collusion

Subject to Section 2 below, no NBA Team, its employees or agents, will enter into any contracts, combinations, or conspiracies, express or implied, with the NBA or any other NBA Team, their employees or agents: (a) to negotiate or not to negotiate with any Veteran or Rookie;...

Section 2.    Non-Collusive Conduct

The following conduct shall not be a violation of Section 1 above:

(e)    any action taken by the NBA League Office to exclude from the League, suspend or discipline any player for reasons involving gambling, drugs, or the commission of a crime. (This subsection, however, shall not affect any other rights of any player or the Players Association to contest such action.)

## ARTICLE XXXII    SYSTEM ARBITRATION

SECTION 1. Jurisdiction and Authority

The NBA and the Players Association shall agree upon a System Arbitrator, who shall (except as otherwise specifically provides by Article VII, Section 3(d)(5) above) have exclusive jurisdiction to determine any and all disputes arising under Articles VII, VIII, X, XI, XII, XIII, XIV, XV, XVI, XXXVII, XXXIXX, and XL of this Agreement, and those made subject to his jurisdiction by Sections 9 and 10 of this Article.

Section 3.    Hearings.

The System Arbitrator shall hold hearings on alleged violations of the Articles set forth in Section 1 above....

(a)    The System Arbitrator shall make findings of fact and award appropriate relief including, without limitation, damages and specific performance. The System Arbitrator shall render an award as soon as practicable, and set forth the basis for such award in a written opinion that either accompanies the award or is issued within a reasonable time thereafter...

4

## FACTS

This grievance protests the decision made by the NBA on March 1, 2004, preventing any NBA team from entering into a player contract or engaging in negotiations with Mr. Vin Baker concerning such a contract. The NBA argued that it had the right to prevent Baker from signing with any NBA team until the arbitration concerning the Association's grievance over the Boston Celtics' termination of Baker's Uniform Player Contract (UPC) is concluded.

The primary facts in this case are not disputed. Baker is a veteran player in the NBA. On approximately August 18, 1999, Baker and the Seattle Supersonics signed a UPC covering the 1999-2000 NBA season through the 2005-2006 NBA season. In July 2002, the Supersonics traded Baker to the Celtics. From July 2002, until the termination of his UPC on February 18, 2004, Baker played for the Celtics.

On February 13, 2004, the Celtics placed Baker on waivers. On February 18, 2004, Baker cleared waivers. On that same day the Celtics, pursuant to Paragraph 16 (a) (i) and (iv) of Baker's UPC, terminated his UPC effective immediately. On February 24, 2004, the Union filed a grievance contesting the Celtics' termination of Baker's UPC.

On March 1, 2004, the NBA issued a directive to all NBA teams, stating, as follows:

> Please be advised that an arbitration proceeding has been initiated by Players Association on behalf of Vin Baker in which the union is asserting that the Celtics had "no right to terminate" Baker's player contract.
>
> If Baker should prevail on his claim that the Celtics did not have the right to terminate his contract, we believe his only remedy would be an order reinstating him.
>
> In light of the foregoing--and until the arbitration proceeding has been resolved--no NBA team may enter into a player contract with Baker or engage in negotiations with him concerning such a contract.

5

Based upon the inability of the parties to resolve this matter amicably, it proceeded to arbitration as set forth earlier in this decision.

## DISCUSSION AND ANALYSIS

The Union raised various arguments in support of its position. First, it alleged that the League's March 1, 2004 directive violated the anti-collusion and free agency provisions in the Collective Bargaining Agreement (CBA). Specifically, the Union claimed that the NBA violated Articles XI and XIV of the CBA. Second, the Association argued that the System Arbitrator has the authority to grant the relief requested in this case. It relied on the language set forth in Article XXXII of the CBA. Third, it maintained that unless immediate relief is granted, Baker will suffer irreparable injury to his career and livelihood.

In support of its position, the League made several arguments. First it contended that the CBA does not provide for any relief sought by Baker in this case. In that regard, the NBA argued that what the Union is really seeking in the instant case is an arbitral equivalent of a request for a temporary restraining order or a preliminary injunction. The NBA asserted that there is no authority for such a ruling. Second, the NBA contended that the issue of whether Baker is able to sign with another NBA team should not be decided until a full hearing on the merits of his underlying dispute of whether the Celtics properly terminated his UPC has been held. It maintained that the remedy requested here is inappropriate at this stage of the proceeding. Third, the NBA claimed that the Commissioner's directive on March 1, 2004 was proper and authorized under the provisions of the CBA. It argued that if the Union's position is upheld, Baker might be under contract to two (2) teams and, therefore, if Baker does sign with another team, that team would not have absolute title to his rights and services.

These issues will be discussed seriatim.

6

## AUTHORITY UNDER THE CBA FOR THIS TYPE OF RULING

The NBA claimed that the CBA does not provide for an arbitrator's ruling, which would be tantamount to a judge's decision for a request for a temporary restraining order or a preliminary injunction. Because the CBA does not provide for the resolution of preliminary issues, the League argued that all matters should be resolved at the merits arbitration of the underlying dispute scheduled to be heard next month.

I disagree. The parties in Article XXXII, Sections 1 and 3 of the CBA, grant extensive and exclusive authority to the System Arbitrator to determine issues of free agency and collusion. These provisions provide that the System Arbitrator has "exclusive jurisdiction to determine any and all disputes arising under Articles ... XI... XIV...". The gist of the Association's grievance centers around an alleged violation of Articles XI and XIV.

Furthermore, Section 5 of Article XXXII clearly provides that all matters before me shall be heard and decided "in an expedited manner". Obviously, the parties were aware of the need for expediency, in that if certain grievances were not resolved promptly, it might result in severe and irreparable injury.[2]

Additionally, System Arbitrator Dam, relying on his broad powers, reformed a player's contract. In deciding <u>National Basketball Players Association and National Basketball Association, Re: Chris Dudley</u>, Case No. 97-03, in September 1997, Dam stated in fashioning a remedy, that:

> ...Recognizing that this result might lead to certain anomalies under the CBA in view of the fact that Mr. Dudley was induced to sign a contract with Portland at the minimum salary level, <u>I rely on my authority to order appropriate relief to accomplish this result, which will best do justice among the parties.</u>

---

[2] See <u>National Basketball Players Association and National Basketball Association, Re: John Starks</u>, Case No. 00-01 (System Arbitrator Kenneth Dam, March 2000);

by placing Mr. Dudley in the contract and salary position he would have been in if the sign-and-trade contract had been carried out by the parties in a timely manner. (My emphasis).

Reading the provisions of Article XXXII together with System Arbitrator Daln's decisions, a ruling here requested by the Union is not unique. Also, I do not view my decision in this matter to be similar to a request for a temporary restraining order or a preliminary injunction as advocated by the NBA. The question presented here is whether the March 1, 2004 NBA directive is violative of certain provisions of the CBA. The answer to this question will be of no consequence in determining whether the Celtics properly terminated Baker's UPC. Thus, I see no reason to discuss the standard requirements for a temporary restraining order, e.g., whether there is irreparable harm and/or Baker's chances of success on the merits in his underlying dispute. Those questions do not relate to the alleged violation of Articles XI and XIV of the CBA.

## INAPPROPRIATENESS OF RELIEF AT THIS STAGE OF PROCEEDING

The NBA maintained that the Union's request for a special ruling at this stage of the proceeding is inappropriate. It maintained that once the merits of this case are decided, then there will no dispute regarding Baker's free agent status. The League contended that the ruling that the Association seeks here could possibly result in Baker being under contract to two (2) different teams.

Notwithstanding the League's argument, I find it unconvincing. Under any scenario, I agree that Baker cannot be under contract to two (2) different teams. The only issue to be decided now is the question of Baker's ability to sign with another team, while the determination of the Celtics' termination of his UPC is arbitrated in the future.

While the parties disagree as to the possible remedies if the Celtics' termination is overturned, that issue does not have to be decided at present. The Union claimed that there are other remedies if a decision is made that the Celtics' improperly terminated

Baker's UPC. The League asserted that reinstatement is Baker's exclusive remedy. Whatever the answer, the question of Baker's ability to sign with another team does not impact upon the ultimate decision regarding his remedies if he is successful in contesting the Celtics' action.

Presumably, any team that would sign Baker now should be aware of the ramifications that might ensue depending upon the decision in the underlying dispute. Such team is in the position to weigh the various possibilities. The Union claimed that by precluding Baker from having the opportunity to sign with another team, he will be severely damaged financially as well as being prohibited from showcasing his talents to other NBA teams. The NBA contended that those arguments cannot overcome its concerns about the integrity of the League and the impact upon the competitive balance of the NBA. There can be no dispute that the competitive nature of the NBA and the integrity of the League are very important considerations and cannot be taken lightly. However, on balance, the equities favor resolving this initial question now. Otherwise, both Baker's opportunity to pursue his livelihood in the NBA and the ability to prove he can still play in the NBA would be stripped at this time. The NBA's concern over possible future ramifications are premature and speculative. When weighed against both of Baker's imminent concerns, the Union's arguments are more compelling.

## ALLEGED VIOLATION OF ARTICLES XI AND XIV OF THE CBA

The NBA contended that the Commissioner's directive of March 1, 2004 was made in accordance with the provisions of the CBA. It is undisputed that the League's Constitution and By-Laws provide the Commissioner with great latitude. He is charged with "protecting the integrity of the game of professional basketball and preserving public confidence in the League".

9

As stated earlier, the ability of a player to maintain contractual relationships with more than one team at the same time contravenes the very integrity of the game. However, the opportunity of Baker to sign with another team at this time does not result in his being contractually obligated to more than one team

The Celtics placed Baker on waivers on February 13, 2004. After Baker successfully cleared waivers on February 18, 2004, the Celtics terminated his UPC. Pursuant to Article 1(y) of the CBA, it is clear that Baker became a free agent at that time. Additionally, in accordance with Article XI, Section 1 of the CBA, Baker became an Unrestricted Free Agent and is able to negotiate a contract with any NBA team. The NBA, while acknowledging that Baker is now a free agent, maintained that by contesting the Celtics' termination of his UPC, he puts "his free agent status in doubt" and, therefore, Baker should be precluded from signing with any other team.

I find that argument unpersuasive. First, there is nothing contained in the CBA which indicates that an NBA player by utilizing the grievance procedure forfeits other rights guaranteed under the CBA. By pursuing what he deems was improper, Baker and the Union have followed the procedures outlined in the CBA to contest the Celtics' termination of his UPC.

More importantly, the parties have spelled out definitions in the CBA for free agency and veteran player status. It is undisputed that Baker is a veteran and a free agent at this time. The NBA seeks to preclude any team from signing Baker until the arbitration surrounding his UPC with the Celtics is decided. Such a position cannot be upheld. Article XIV precludes the NBA and/or its teams from acting in concert to negotiate or not negotiate with a veteran. The only exceptions to this provision are set forth in Article XIV, Section 2 which states, in pertinent part, as follows:

The following conduct shall not a violation of Section 1 above:

>   (e)   any action taken by the NBA League Office to exclude from the League, suspend or discipline any player for reasons involving gambling, drugs or the commission of a crime...

10

Under no reasonable view, are those exceptions applicable here. The parties realized that under certain circumstances the Commissioner could preclude, suspend or discipline a player when the player was involved with gambling, drugs or a commission of a crime. These are sophisticated parties. Their decision to permit only these exceptions are purposeful. It would be inappropriate to expand these exceptions beyond their chosen words.

The NBA argued that Article XIV is relevant only in this proceeding if I decide that Baker is a free agent. As indicated earlier in this decision, Baker cleared waivers under the provisions of the CBA, which made him a free agent. The fact that he is contesting the Celtics' termination of his UPC pursuant to the provisions of the CBA, does not change his status today as a free agent. Being a free agent, the NBA is precluded under the collusion provisions of Article XIV and the free agency provisions of Article XI from denying Baker the opportunity to sign a contract with another NBA team.

***************
## AWARD
***************

After carefully considering all of the arguments raised in the pre-hearing submissions and those made at the hearing, I find that:

1. The National Basketball Association violated Articles XI and XIV of the Collective Bargaining Agreement when it promulgated its March 1, 2004 directive, which prohibited any NBA team from entering into a player contract or engaging in negotiations with Mr. Vin Baker until his arbitration proceeding

11

regarding the termination of his UPC by the Boston Celtics has been resolved;

2.  Mr. Vin Baker is not precluded from signing a contract with any NBA team;

3.  The grievance is sustained, in accordance with the rationale set forth in this Opinion and Award.

DATED:  MAR 1 1 2004

Roger P. Kaplan
System Arbitrator

Alexandria, Virginia